Gerald Bard Shoflat courtroom. It's a real, and I believe probably the first time for you as well, Judge Branch. Absolutely. An honor to be here. It's a real honor for me to hear appeals in a courtroom named for one of our country's most honored and distinguished judges. And we have four appeals that are scheduled for oral argument this morning. And the first is the United States of America v. Christopher Brian Cosimano and Michael Dominic Mincher. Jason Jervis Wise is here for Cosimano. Darlene Barrow is here for Mincher. And Mr. Wise, you may be, Sarah Sweeney is here for the government. Mr. Wise, you may begin. Mr. Court, my name is Jervis Wise and I represent Appellate Christopher Cosimano in the case we're here on today. We've raised several issues in our brief as the court is aware. And if it would please the court, I'd like to begin by addressing issue two of our brief, which was the question of whether the predicate offense charged in Mr. Cosimano's 924C count was a crime of violence. Members of the court, it's been our position that the predicate charged in the 924 count was Florida first degree premeditated murder. And the reason we say that is because the wording of the count was that the underlying offense was murder in aid of racketeering as charged in count two. Count two of the indictment, in turn, specifically charged the Florida first degree premeditated murder statute. And that was something that came up multiple times in the district court when motions to dismiss were filed as to that count. And the government would each time hone it down until it specifically charged Florida first degree premeditated murder. Now, attempted first degree murder is a crime of violence, right? Yes, Your Honor. So it just seems that if attempted first degree murder is a crime of violence, which we said in the United States v. Howler, then first degree murder must categorically be a crime of violence. I recognize, Your Honor, this court's precedent certainly points to that. And I would argue that the Borden case somewhat opened the door to reconsider that. And the crime of violence must be the defendant using direct force directed at another person. And, of course, in Borden, what they were really addressing was whether reckless conduct would constitute a crime of violence. But in reaching that, they also relied on the definition for use of physical force as being volitional or active employment of physical force. And I also recognize that in relying on that definition, they went back to the by the time Howler and Sanchez were decided in this court. Wasn't Borden limited to an aggravated assault statute? It was. It was. Yeah. So we're still bound by our precedent, right? And so, I mean, Thompson v. United States, if we look to the generic federal definition of murder, then we're bound by our holding that generic federal murder,  Well, Your Honor, with respect to the generic murder, I think that Borden definitely opens the door to reconsidering that principle. And I recognize this has become somewhat of a multifaceted argument because the government's position is count three charged vicar, not Florida first-degree premeditated murder. And the government has asked the court to look at whether generic murder qualifies as a crime of violence. The reason I say Borden opens the door to reconsidering that is because the generic murder relies on a killing committed with malice of forethought. And based on this court's definition of malice of forethought, it would encompass what I believe is reckless conduct that Borden says cannot constitute a crime of violence. This court's standard instructions define malice of forethought to include willfully acting with callous or wanton disregard for human life. What about the intent requirement of the vicar statute which requires that a person act with a motive to maintain or increase their position in a racketeering organization? Why doesn't that element supply the requisite intentional use of force for purposes of the elements clause? Well, I think categorically a person could still act with the intent to cause a death, intend to commit a murder. Well, explain that to me. How could someone commit a murder with such a motive without the necessary active and intentional use, attempted use, or threatened use of physical force? Well, I think for instance, one example may be in this particular instance, a motorcycle rally and someone drives a car at high speed near a crowd. They're not intending to commit a murder, but they actually do kill someone. I think under the generic murder statute, they would have committed murder, but they would not have actually intended to take a life. And in that situation, I think the recklessness, reckless conduct would support a conviction under vicar if they were committing this reckless act to try to increase their position by, for instance, doing this to scare another motorcycle group or to try to bolster their position within their own motorcycle group by committing this reckless conduct that would get attention. So I recognize that there are limited situations where that could happen, but I think that there are, if we look at what could be the punished conduct that is, I guess, the least culpable, it could categorically not fall within the crime of violence definition. And I do think that that took me off of, again, what our position is, is that this wasn't a vicar charge, but I certainly recognize that the government has raised that argument. But I think even under the Florida first degree murder statute, and I know that this is something that the court has rejected in the past, but I believe there are instances in which there could be a murder committed that's premeditated but does not use actual force. And the one example I've raised is the starvation of an infant, which is a horrific crime, but it's one that actually is committed with the omission of any force. It's actually the inaction that causes the offense. That's something that could be a murder under either the generic statute or the Florida first degree premeditated statute. Let me ask you a question about, I recognize this is not your position, it's the government's, about the generic definition of murder. And I recognize this wasn't briefed by either party, but wouldn't, if we agree with the government that we look to the generic definition of murder, don't we first have to determine whether it's divisible? That is something that was raised, and I think that that is a question that the court would probably need to consider. I believe that Vicar, in my view, is divisible really with respect to the punishment. If you look at the statute, it breaks down, it divides the statute with respect to the punishment that would be imposed. For instance, life imprisonment for murder, up to life for kidnapping, maiming, imprisonment for not more than 30 years. So I think that really it's divisible in the punishment that imposes, but I don't believe it's divisible in the offense that it actually prescribes. But I do agree that that is something that the court would probably need to consider, and I believe it's something that has not been addressed yet with regards to that statute. Is my understanding correct that the predicate crime here was not Florida first degree murder, it was murder and adebracate tearing? That's been a point of contention, Your Honor. I believe it is charged. I believe the way it was charged and the way that this was argued in the district court is that it was Florida first degree premeditated murder because it specifically is charged as murder and adebracate tearing as charged in count two. And count two very specifically charged Florida first degree premeditated murder. And that was something that the district court had issue with when we were discussing jury instructions, and she brought up the fact, I don't know why the government charged it this way, but it has been charged this way, and I believe in the district court's view, it was Florida first degree premeditated murder and not just the generic murder offense. I believe my time is up. Thank you. Thank you, Mr. Wise. Ms. Bower. May it please the court. Darlene Bower on behalf of Michael Mencher. Your Honors, we divided up our time and of course that issue is pertinent to both defendants. There are two other issues that I believe are pertinent to both defendants. One is that the government presented a picture of the 69ers as a national organization. In reality, when one reads the testimony at trial, it was five men, four of which were officers that had really no purpose other than putting on jackets and riding motorcycles to some nearby cities. The clubhouse was a shed in the back of the president's house. There is an allegation that there were some drug sales, but it was very remote and it didn't appear clear that the organization was involved in trafficking drugs. It's our position that to find that this organization is any kind of organized enterprise is erroneous. What about our case, Arvagon v. Hull, where we say that for purposes of a RICO action, an enterprise may be an amoeba-like structure or loose informal association? Yes, Your Honor. I recognize that and I think that this was even looser than what was anticipated because it was such a small group with no real purpose. Our second joint point that we have is the juror, Juror 3, that decided that he was going to do his own research and then came back to the jury and attempted to explain. We think he attempted to explain that conspiracy to commit murder was different than conspiracy, but the jury instructions talked about conspiracy. I know the court interviewed each juror and each juror stated that they could follow the court's instruction, but each one of the jurors did hear Juror 3 in his rendition of what he had researched conspiracy to be. We believe that that error should have resulted in a mistrial. Of course, we review that issue for an abuse of discretion and all of the other jurors that were interviewed by the court assured the court that they could decide the case based on the evidence. Each one was interviewed, Your Honor, and each one said that they could. How much effect the definitions done by Juror 3 impacted them, we don't know, because apparently they didn't really, or it sounded from the interviews like they weren't real clear on what the instruction was. Weren't real clear on what the instruction was or weren't real clear on what the juror told them? I think both things, Your Honor. It sounded like they didn't really understand Juror 3's explanation of why what he had researched as far as conspiracy didn't line up with the court's. But doesn't that cut against the argument that the district court abused its discretion when the other jurors testified we weren't really sure what the juror who did the investigating was talking about? Yes, Your Honor. I think that the court was thorough in that investigation or that questioning, but the fact still remains that that juror did give his version to the jury and how much of that was affected the jury, we'd never know. Thank you, Ms. Baer and Ms. Sweeney. You may proceed on behalf of the government. Thank you, Your Honor. Good morning. May it please the court, Sarah Sweeney on behalf of the United States. The defendants raise two challenges to their 924C convictions, both of which are flawed. First, they contend as they did below and in their opening briefs that Florida first degree murder does not require physical force. But this court's controlling precedent has rejected that theory over and over in Hiler, Jones, Thompson, and Sanchez. That includes as to the starvation example that my colleague raised here this morning. In the Sanchez case, this court rejected the idea that starvation would not be a use of physical force in situations where starvation could be charged as first degree murder because of some duty or some requirement that the defendant feed someone else. Second, for the first time in their reply briefs, the defendants try to raise a challenge under Borden to the mens rea that's required for depraved heart murder. They forfeited this challenge by not raising it in their opening briefs. Even if this court were to consider that challenge anyway, the standard would be plain error because they can't meet that either. Regardless, there's no error at all because as Judge Branch pointed out, what the court would look at here if it were going to consider a Borden mens rea issue is the modified categorical approach. The modified categorical approach here shows that the defendants were charged with premeditated vicar murder. That requires an intentional murder and does not run afoul of Borden's holding that purely reckless conduct is not a crime of violence. As you also pointed out, Judge Branch, none of this was briefed, but in preparation for this argument, I did look at cases that talked about some of the concepts that would be at issue here if the court chose to reach a Borden issue, which again, the government doesn't think that you should because this was not raised in any of the opening briefs. There wasn't any request for any supplemental briefing. I will note that Mr. Cosimano's brief was filed before Borden was decided, but Mr. Mencher's was filed after Borden was decided, about three months after Borden was decided. What they're really saying to the court here is that they're focusing on physical force, and that's been their contention for this entire case. It's about physical force, not about the mens rea requirements in Borden. But again, if the court decides to get there, I think the analysis would work something like this. Vicar itself is divisible into different kinds of conduct, including murder, maiming, aggravated assault with a weapon, the different that sets forth the analysis that shows why Vicar itself is divisible. Government's position would then be that Vicar murder... So Vicar murder, and help me understand this, requires only a mens rea of recklessness? No, your honor. So I think Vicar murder is itself further divisible. So if you looked at Vicar murder, that could comprise any kind of murder. So it could be intentional murder, it could be premeditated murder, and it could be felony murder. But the other courts, this court's never decided this issue either, but other courts have decided that the modified categorical approach applies to common law. And I have some sites that I'll read in just a moment, but in the same way that modified categorical approach can apply to common law, it should also apply to the generic federal definition of murder. So the other circuits that I found that have applied the modified categorical approach to common law are the Fourth Circuit in a case called Montez Flores, 736 F3rd, 575. The Second Circuit in Walker, 595 F3rd, 441. And the Ninth Circuit in Melton, 344 F3rd, 1021. On top of the fact that the modified categorical approach can be applied to common law, other courts that have considered murder statutes that include various forms of murder have also decided that those statutes are divisible. First I would point to this court's decision in Thompson. Although it doesn't actually conduct the analysis, it implicitly decides that 18 U.S.C. 1111 is divisible because it focuses only on the type of murder that was at issue there. It does not consider the second degree murder parts of 1111. In addition to that, in an unpublished case, a panel of this court held that the Florida murder statute was divisible. That's Alonzo v. Attorney General, 810 F Appendix, 813. I'm not bound by that. No, agreed. And all of this is persuasive. I mean, most of what I am saying to you obviously is persuasive authority, Your Honor. And then the Fourth Circuit, in a published opinion, but again, still persuasive, considered 18 U.S.C. 1111 directly. That's 32 F Fourth 278. I'd also point out that there's no issue with a statute being divisible on multiple elements. And this court's decision in Moss makes that clear, where the court considered Georgia aggravated assault and said that it was divisible on both the aggravating factor and the simple BICAR is first divisible by the type of conduct that's at issue there, murder, maiming, assault with a deadly weapon, and then is again divisible when you get to the murder as to what type of murder is at issue there. And so then, because it is divisible, you look to Shepard documents, including the charging document and the jury instructions, both of which make clear here that we are talking about premeditated murder. And so after you step through all of that analysis, which again I apologize is not laid out in the briefs because this issue wasn't raised in a way that it could have been briefed, you get to the conclusion that the BICAR murder charged here was premeditated and therefore there's no concern about Borden, about even depraved heart murder. If the court did want to look at depraved heart murder, which is the kind of murder that the defendants here contend would not qualify under Borden, I would also point out that two other courts, one court has considered depraved heart murder since Borden and has said that it still qualifies. And that's the Ninth Circuit in a case called Begay. It's actually on Bonk 33F4-1081. Before Borden, the First Circuit also found that depraved heart murder required more than reckless conduct in a case called Baez-Martinez 950F3-119. Did you have a question, Your Honor? I'm sorry. Okay, thank you. So, Your Honor, that's our response to the 924C challenge and I'm happy to answer any questions about it. I'm also happy to move on. So, the other challenges raised were that the 69ers were not an enterprise here. And I think the one flaw I see in the defendant's argument about this is that they have wanted to focus on the Hillsborough County branch of the 69ers. And the indictment is actually about the 69ers Motorcycle Club, which is a national organization with many goals. There was lots of testimony at trial about the outlaw biker world and how they considered groups like the 69ers considered themselves the elite of that world and had rules and constitutions and national leadership and required meetings and dues. This is a formal organization. This isn't even amoeba-like or informal, even though those also would count. How much were the dues? I'm sorry. $50. They were $50 a month, I believe, Your Honor. Yes. But over time, I mean, that's actually quite a hefty amount of dues that someone pays kind of in perpetuity. And even if you looked at just the Hillsborough County part of the 69ers, even that qualifies as an enterprise, which really only requires a group of people united for some kind of a common purpose. And I think that the evidence here that they had kind of structures and rules meets those requirements at any level of the organization, national or local. And then finally on the juror issue, I think that the testimony from the jurors, if you read it, is clear that what they did not understand was what the kind of wayward juror was trying to tell them. They didn't understand what legal point he was trying to get across. And I think that points to another flaw in the defendant's argument about this, which is they've never been able to explain how what that juror said even would have caused any prejudice to them in any event. There's kind of no explanation from, I think essentially, it's a little difficult to understand what he was saying, but I think essentially what he was saying is, I don't think that we should have gotten an instruction about generic conspiracy. There's like a standard charge in the jury instructions. I think he was saying, I feel we should have been instructed on conspiracy to commit murder. And he was confused about why they weren't specifically instructed about that. But there's no connection between what he said and any detriment to the defendant, certainly not once the jurors were all instructed to disregard that and that juror was discharged. There are no other questions. I will otherwise rest on the United States briefs. Thank you very much. Thank you, counsel. Mr. Wise, you've reserved some time for rebuttal. Members of the court, I'd like to begin by addressing one of the government's arguments being that we had waived any challenge to the question of whether generic murder qualifies as a crime of violence. The reason that was not addressed in the initial brief is because our position at that point, and still, is that the predicate charge was Florida first degree premeditated murder. The government's position and response was that, no, we think that it charged vicar murder. So the government then asked to consider whether generic murder qualifies as a crime of violence as it would be charged under vicar. So at that point, then we have to respond to the government's argument. And I think saying that we have waived that is saying, well, you can't defend against our position even though we're raising it for the first time. So I would suggest the fact that we did not address whether generic murder is a crime of violence was certainly reasonable and it was something that we addressed only after the government brought that as an issue. As to the question of whether vicar murder is divisible, I don't believe that it is. Again, I believe it's the statute is divisible in the punishment prescribes, but vicar murder is very general in the statute. It just uses the word murders. I don't believe that it's divisible. It certainly is a very, very broad term and would encompass quite a bit of conduct, which would include, I believe, reckless conduct. I would point out as well in the Borden opinion, Justice Kavanaugh issued a dissenting opinion in which he recognized that the court's opinion in Borden could now provide for certain types of murder to be, at that time it was a violent felony, but it would apply just the same to a crime of violence. So I believe Justice Kavanaugh actually saw that this situation could occur where a murder, a generic murder or whatever kind of murder it may be that involved reckless conduct would now fall outside of the purview of the crime of violence determination. I would suggest that's the position we're in now and I would ask the court to find that the murder charged in count three, whether as in the Florida offense or the vicar murder offense, could not categorically qualify as a crime of violence. Thank you. Thank you, Mr. Wise. Mr. Bauer, have you reserved time? All right. Thank you, counsel. The next case is the United